May it please the Court, I am Jack Swift. I am here on behalf of the appellant planted in the court below, Michael Lewis Swift. In deference to the Court's rather congested calendar this morning, I have attempted to be very brief in my presentation. I don't want to attempt to rehash the arguments presented in the briefs. Simply, I would like to present to the Court the appellant's request that the Court consider two important factors while it makes its determination whether the acts of these particular defendants were judicial acts qualified and entitled to absolute judicial or quasi-judicial immunity. Factors of concern, the Court should be aware, as it does its analysis, that the system of parole administration utilized by the State of California is somewhat peculiar with regard to traditional parole. And second, the allegations of the complaint presented herein suggest strongly that the system is out of control. The peculiarity issue is important because the California situation doesn't mesh well with a lot of the precedent cases. The lack of control should be of concern because it amounts to a frustration of a lot of law. When I say that the California system is peculiar, I relate to the Supreme Court case Morrissey v. Brewer, where the Supreme Court defined parole as being essentially early release in exchange for the offender's promise to abide by certain rules. That's not what happens in California. Under California's mandatory determinant sentencing law, an offender must serve his full term. There is no provision whatever for early release. The only deductions from whatever the sentence is come in the form of specified earned time credits. They may be good conduct credits, education credits, work credits, whatever. But that's the only reduction. Further, the California legislature has established that parole is necessary for all offenders upon completion of their custody sentence. There's no if, or and, or I. How do those how do those general principles of California parole impact this case here? They impact this case, Your Honor. As we compare the case law that exists, they may be applicable. The principles enunciated may be applicable in certain states and not in others. The effect of the mandatory parole is that essentially the offender upon conviction is sentenced to a period of time of physical custody in the care of the Department of Corrections. In addition, there is a second unspecified sentence. Which is the constructive custody again of the Department of Corrections, but this time through the parole and community services division. The case. The situation in California is also peculiar in that California utilizes two departments in the process of parole administration. They utilize the Department of Corrections, specifically the parole and community services division for parole enforcement and supervision. For the judicatory purposes, they utilize the Bureau of Prison Terms. And which which department were these defendants in? These defendants. One defendant is a field agent in the interstate parole supervision unit in Sacramento. Which department? And that is a division of the parole and community services division. The other defendant is a supervisor in the PNCSD in the Chula Vista office in California. It should be noted that in the system, according to the policy guidelines of the Department of Corrections. The parole agents. The PNCSD people have no role and no function in the adjudication of a parole revocation hearing. They may be called as witnesses, in which case they would be, of course, participating in the decision making process. But they are not required to be, and it's not policy that they in fact be. Finally. And this peculiarity is somewhat important. Most of the cases tend to mix probation and parole all under one half. And while they are somewhat similar, they are not the same creatures. And particularly in regard to safety factors and safeguards of concern to the Supreme Court. An analysis of what happens in probation shows that the entire time probation officers are under the control and direction of a trial court judge. Any report they issue is subject to adversarial challenge by opposing counsel. There is an issue of appeal that is available. These factors are not true in the parole process. The parole agent in the system of the PNCSD and the separate Bureau of Prison Terms is not accountable to anyone. And specifically, the trial judge at an adjudication hearing or a revocation hearing has no knowledge of the case until it gets to his desk on the day of the hearing. So basically what you're saying, then, is that these folks are not functioning as judicial or quasi-judicial officers? Absolutely. That's our position, Your Honor. And I think that position can be confirmed and verified if you will analyze the activities undertaken by a parole enforcement agent, the parole field parole officer, as opposed to a parole board member, parole officer, and compare those activities with the activities of the traditional law enforcement officer, which are investigation of suspected offenses, possible arrest, tender of reports to a prosecuting district attorney, and submission of evidence. That's what law enforcement people do, and law enforcement people have never been afforded absolute immunity. I've tried to be brief. I'll reserve whatever time. That's fine. Thank you, Mr. Swift. All right. Let's hear from the State. Good morning. I'm Richard Wolfe, Deputy Attorney General. I'm appearing for the defendants who are both parole officials with the Department of Corrections of the State of California. In Anderson v. Boyd, this case determined that the actions of officials such as the people I represent in this case are quasi-judicial. They're part and parcel with the parole revocation process, which this Court determined in Sellers was entitled to quasi-judicial immunity. In Anderson specifically, the plaintiff repeated the — I'm sorry, alleged that he had been repeatedly arrested and placed on non-bail parole holds pending investigation. No, but in Anderson, the defendant was the chairman of the parole board, right? No. In Anderson, one of the defendants, Boyd, in fact, was part of Oregon's interstate compact unit, as is Mr. Christian in this particular case. In Anderson, he also alleged that the officials had made false, knowingly false statements to various parole officials, as well as officials outside of the parole system. Here — pardon me. Here, the plaintiff alleges that he was improperly and unreasonably arrested, pursuant to an unlawful parole hold. Well, you know, in both Anderson and Sellers, I guess is the other case, it's pretty clear the officials were actually exercising judicial-type functions. In other words, making the actual determination of whether or not parole should be revoked. Right? They were the decision-makers. In Sellers, they were talking about what would be traditionally called a parole board in California, the board of prison terms. But in Anderson, they were not. And that was the importance of Anderson. Well, in Anderson, they were not. But Anderson, I think, relies on Sellers. And, you know, it uses the language about, well, absolute immunity does not attach to the performance of duties not requiring the exercise of quasi-judicial discretion. And the absolute immunity in Sellers extends no further than necessary to accomplish the purpose to insulate the adjudicatory decision-making. So I think it's pretty clear in those cases they're talking about, you know, immunity going to persons while they're performing the function of making the parole revocation decision. We don't have that here, right? We do. These officials weren't the officials who decided whether or not to revoke parole. With respect, Your Honor, I think I agree. Is that right? In Anderson, after making that comment, which I cited in my brief because I think it's the main focus of Anderson, the Court then went on and said that the activities that the plaintiff in this particular case alleged are exactly the same as were alleged in Anderson, and the Court in Anderson said that those were subject to quasi-judicial immunity. And if I may ---- We're to end. Now, in our case, this case, the plaintiff alleged ---- Yes. Yes. The district court, I think, said it best when they said that when the Court said that the allegations in this case, the Swift matter, are nondistinguishable from those in the Anderson case, and basically it has to do with the non-bail parole followed by an arrest, followed by false presentation of evidence or other acts and wrongdoings. And in Anderson, the Court said those are quasi-judicial immunity ---- sorry, quasi-judicial acts because these parole officials are making discretionary decisions about whether or not to hold arrest and then process through the revocation process. That's why they are subject to ---- Well, if you hold an arrest, it's not the same as a decision to revoke parole, is it? I'm sorry. Hold. You just mentioned hold and arrest. Those decisions aren't the same, aren't the same, of the same quality as a decision whether or not to revoke parole. That's true. They're not. But it's part and parcel of the parole revocation process. Oh, then that, I mean, that would be like extending absolute immunity to the arresting police officer. Yeah. Well, in this case, though, we're dealing with parole officials. Which doesn't apply, right? An arresting police officer is not entitled to absolute quasi-judicial immunity. That's true. But with respect, I think that's an analogy that doesn't quite fit because in this series of events, we're talking about a person who's already been convicted of a crime. We're talking about parole. And we're talking about the parole officials whose job it is to implement and be part and parcel of the parole revocation process. Well, there you go. You see, now, that's different. Implementing that process is different from making the quasi-judicial decision of whether or not parole should be revoked, isn't it? I don't see it that way. And I think the reason I don't see it that way is that for simple reason, but for the In other words, they were the people who decided, made the decision, exercised their discussion, looked at the information, and made that adjudicatory kind of analysis, and said and came to the conclusion that this person should be subject to a parole revocation hearing. The decision they're making is essentially one of judging them eligible for revocation based on their assessment of the fact. I think that's what I have. And therefore, having suspected that he is eligible, then it goes to the parole process in which someone with authority to decide whether the parole officer is right or wrong will make the decision. I believe that's probably a fair summary of what I said. Okay. Now, how does that you say it's not a good analogy between that and an arresting police officer? An arresting police officer can have standards of probable cause and the like. What's the functional difference? An officer has to have some reasonable belief that a crime has been committed. I think the important distinction is that absolute immunity should be afforded in those cases where the primary purpose of absolute immunity needs to be preserved, which is to protect those decision-makers from the chilling effect of lawsuits. Well, who do you mean when you say those decision-makers? In this case. Everybody who works in the Department of Corrections and everybody who works for the Parole Board? No. Only those who make the kinds of decisions that this Court held in Anderson were subject to qualified immunity. I'm sorry, quasi-judicial immunity. I think here also it's important to point out that my motion to dismiss the First Amendment complaint was sustained with leave to amend. And in doing so, the district court made a point of instructing the plaintiff and I think this was actually a very good move by the district court, instructing the plaintiff to come forward with crisp allegations showing that these defendants had engaged in functions and activities that were not covered by Anderson. And as we now know, the Court concluded that the allegations of the Second Amendment complaint did not show allegations that were not encompassed within this Court's Anderson decision. And I think that's why the Court then dismissed without further leave. Frankly, I thought that was a good balance, because as this Court said in Sully, what it's attempting to protect is what it called the broader societal concerns of ensuring that parole officials can perform their duties without fear of losses. And the Court then ---- That just kind of describes the result, not the analysis that gets you there. In the Antoine case, the Supreme Court was talking about court reporters, if you remember that case, and said, when judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges. That is, because they, too, exercise a discretionary judgment as a part of their function. What function of judges would you compare the conduct of these officers to? It may be closer to a prosecutor than a judge. I believe just very recently this Court, in fact, extended quasi-judicial immunity to members of the Idaho Medical Board. I apologize. I don't recall the case. I believe it was just within the last few days. But so when a prosecutor makes the decision, it's based upon his or her analysis of all of the factors that are part of a criminal prosecution process. I certainly wouldn't argue that a parole agent is the same as a judge, but I think a better analogy may be that it's a little ---- that he or she is a little bit closer to a prosecutor. And quasi-judicial immunity, as the Court knows, is generally applied to those in the adjudicatory or prosecutorial arena. And I believe that's why this Court decided the way it did in Anderson and why Anderson has remained the law for close to 20-some years now. If I could, just in closing, I think this Court ---- well, my time is up. May I have 10 seconds to conclude?  In Sellers, this Court made a statement that I thought summed up the whole issue very, very well. It said, and I quote, ''The alternative'' ---- I'm speaking of the alternative to absolute immunity ''The alternative of qualified immunity or no immunity at all would disturb the public interest because these officials would still be subject in some degree to vexatious litigation.'' That's the hallmark of absolute immunity, and that's why I think the Anderson decision is well decided. I think it's why it clearly applies here. Thank you very much. All right. Thank you. Roboto. For a quick clarification, the defendants in Anderson v. Boyd, one was the chairman of the parole board, and the other was the director of the interstate compact unit. It's important that in both cases, our case and Anderson v. Boyd, the crux of the matter was the issue of this parole hold order. What's not clear in Anderson v. Boyd is, in fact, who issued it. In California, it is very clear that as a matter of law, parole hold orders and arrests pursuant thereto are undertaken by the field parole officers, the actual agents, independent of any action or knowledge of the board of prison terms, which is the adjudicatory body. When the district court made its ruling, the district court said, ''Yes, the issuance of a parole hold order is exactly the activity that was described in Anderson v. Boyd.'' And the district court went on further to say they could find no authority for making a distinction regarding the implementation of the parole hold order by whoever is doing it, feeling that was more a matter of status rather than analysis of activities. The question of whether these actions by these defendants were judicial acts has been addressed by the Supreme Court. Judicial acts are, in fact, the rendering of a decision settling disputes between parties when those parties are dealing with that individual in that decision-making capacity. And that is not what happened in the field here. Finally, on the issue of the importance of protecting these people from harassment, in Clevenger v. Saxner, the Supreme Court pointed out we should look to alternatives. We should look to providing defense of these people by the government, which we have here, and we should look to indemnifying these people by the government, which is a fact in the California Government Code. Thank you. Thank you. Thank both counsel. This case is submitted for decision. Call the next case, Shire v. Ashcroft. Shire v. Ashcroft.
judges: Tg Nelson, Tashima, Fisher